Good morning. May it please the Court, Elizabeth Hawkins for the petitioner Domingo Quebrado-Cantor. I will try to reserve a few minutes for a rebuttal. All right. Keep your eye on the clock, please. I will. Thank you. When Mr. Quebrado was just 10 years old, he was subjected to months of frequent threats, verbal abuse, the throwing of rocks, and violence which culminated in his witnessing the brutal massacre of his close family members. There is no dispute that Mr. Quebrado's family meets the requirements of controlling case law as a particular social group. The issue here is whether substantial evidence would have compelled the conclusion that Mr. Quebrado was eligible for asylum and withholding of removal and whether the correct standard was applied. Both the immigration judge and the Board of Immigration Appeals applied the wrong standard and they also disregarded substantial evidence in the record pointing to direct harm to Mr. Quebrado, mixed motive on the part of his persecutors, and to the relationship between his family group and the persecution he suffered. We had sent out an order requesting the parties to address Barajas Romero. And how do you respond to the government's argument with regard to, number one, whether the proper standard was applied, and number two, if the wrong standard was applied, which I think it was, then why isn't it harmless error? Well, as the government concedes in note two of its supplemental letter brief, where the evidence shows that the persecutor was or will be motivated not only by a protected characteristic but another non-protected motive as well, or the protected ground motive and another non-protected motive may be intertwined, the agency cannot stop at the basic motive requirement. It must conduct a mixed motive analysis. And here there is substantial in the record pointing to a mixed motive. The immigration judge disregarded the evidence of direct harm to Mr. Quebrado and his siblings, only focusing on the motivations of the persecution of his uncle. And the Board of Immigration Appeals also disregarded that direct evidence and selectively quoted from a newspaper article saying that the land dispute was a contributing factor. I'm looking at page 258 of the record. The board disregarded language in that same article that talked about the family tensions arising from another dispute and implying that the land dispute may have been a symptom rather than the cause of the tensions within the family. So there was substantial evidence here of a mixed motive. Was there a finding of that there was no substantial evidence that there would be future persecution? If you're asking whether there was a finding that there was no nexus whatsoever, there was no finding to that effect. The finding of the immigration judge was, well, he first applied the one central reason standard and analyzed the nexus only under that standard without discussing the multiple motives at play. And he also found that he didn't analyze the family group. He said that the persecution of the family had to also be on account of a protected ground. So his holding is quite confusing and erroneous in that regard. The Board of Immigration Appeals also just pointed to the land dispute but didn't conduct an analysis of the mixed motives here. Does that answer your question? Well, I'm not sure, but it may be my confusion. If there was no reasonable likelihood of future persecution, what would it matter that they made the wrong analysis on past persecution? Because the finding of past persecution entitles Mr. Cabrado to a presumption that he will be persecuted on account of the same grounds. But that's a rebuttable presumption. It is a rebuttable presumption, and the government can rebut that presumption. So that was my question. Was there any finding at any point by either level of the immigration judiciary as to what had been established or not established as to future prosecution, whether the government had rebutted the presumption? Because, to be frank, it seems like a very unlikely situation that there would be future persecution. Well, there was no specific finding in that regard. The immigration judge did point to the fact that Mr. Cabrado's family continued to live in the area but didn't apply the two grounds under which the government could have rebutted the presumption, which are whether it would be reasonable for Mr. Cabrado to relocate and whether there had been changed country conditions. And there were no holdings as to either of those standards. And whether or not the government could rebut the presumption would be a question of fact for the agency on remand. But we would argue that there has been no change in country conditions. All of the adult persecutors remain at large. The land continues to be abandoned, and the family group relationship still exists. The only family members who were apprehended by authorities were the very elderly grandfather and two teenage girls, so all the adult persecutors remain at large in Mexico. And as to relocation, Mr. Cabrado has lived in the United States since he was 14. He testified to the fact that the only reason his family remains in their hometown is because they don't have anywhere else to go. So we would argue that his lack of economic resources and ties in other parts of Mexico would make relocation unreasonable. And that would be the standard that would be applied to rebut the presumption. Did you want to save the rest of your time? Yes. Thank you. Good morning. May it please the Court, my name is Lauren Fassette, and I represent the Attorney General. Here, the record does not compel the conclusion that Mr. Cabrado was harmed on account of a protected ground. The agency considered all of the evidence and all of the asserted claims and found the sole motivation for the incident was a dispute over land, a personal dispute over who owned land and access to a well. There needs to be a basic motive requirement for asylum. There has to be harm on account of a protected ground. And here, the agency found that none of the incidents that happened were on account of a protected ground but were solely because of this dispute over land. And that finding is supported by substantial evidence. For example, in Mr. Cabrado's asylum application, he states that his grandfather killed his uncle because of a land dispute. In his declaration, he said the fight started because Juan, the grandfather, wanted the land that Isidro lived on. He continued they argued about who owned the land and fought over access to a well. In the newspaper article, it said the dispute was over land and that they prohibited each other from using the same water outlet. It continued that Juan stated, the grandfather stated, that his motive of the aggression was due to a dispute over a piece of land. What about the fact that the petitioner family had no stake in the land? Wasn't this a dispute between other family members? This was a personal dispute between the grandfather and the uncle, and to the extent other people were involved on one side of who owned the land versus the other, that was still a dispute over land. So the uncle and the grandfather were fighting over land or access to the well. Petitioner's family refused to take sides. Correct. And so they were targeted because of that refusal. Is that a fair reading of the record? It's a fair reading that petitioner's father was approached by the grandfather and people who were on the grandfather's side of the land dispute to say, support our position that we own the land and that the uncle does not. So if it weren't for his tie to the social family group, would he be targeted for persecution? Yes, potentially, yes. He could be targeted because he was a neighbor who was there in proximity to the land and the well. There's no indication that the substantial evidence doesn't support the finding that the father was only targeted because of a familial relationship. The fact that all of these parties were. . . Wasn't it because different family members were taking sides and his father refused to take sides? That's correct. Unlike a neighbor who would have no familial connection to the family, this is an intra-family dispute where people were being asked to take sides, and their refusal to do so was what caused the persecution. That's my reading of the record. I understand. Why isn't that correct? It's a subtle point that because they are all related. . . Yes, this is a whole family of people and there is a relation, but that familial relationship is not what drove the dispute or the approaching of petitioner's father to take sides. What drove that was wanting people to support one side of a dispute versus the other. They were not targeted because of the familial relationship, and particularly the petitioner did not witness the murders, and to the extent he testified that some of his uncles or his grandfather when drinking would sometimes yell at them or throw rocks, that still doesn't show that that's because of a familial relationship, but because. . . Is there any indication in the record that non-familial people were being asked to take sides? It's my understanding that this particular area where the family lived was mostly all, if not all, family just living in this one area, so I don't know that there were other people not related. But again, just because there is a familial relationship doesn't mean that that was the reason for any harm, and you have to separate the nexus finding requires the persecutor know of and be motivated to harm someone because of the protected ground. And here the motivation for this entire incident and for asking people to take sides was to acquire this land and have access to the well, and the record supports that finding. The standard of review here means that even if this court disagrees or is persuaded that there might have been some other reason, that's not enough. This court would have to be compelled to conclude that the agency was wrong in finding this was a single motive case involving a personal dispute over land and was no harm was directed at anyone on account of a protected ground. Here there is no lack of reasoning. The immigration judge considered all of the evidence and the argument that family, that they were related and that family may have played a role, but the agency found here that the evidence only supported this single motive of a personal dispute over land. So this was not, the agency did not see this as a mixed motives case. They found that considering all of the evidence in the record, this was a single motive case about a personal dispute over land, and the fact that these people were related does not make this suddenly a nexus on account of case. Again, they could be neighbors, you know, and even when the grandfather attacked the uncle, and the uncle's family who were present in the home at the time were also attacked, again, because they were there. Perhaps they didn't want witnesses. There was a sort of rage mob mentality at that point, but also five young girls ran out and were not chased after and were not injured during that dispute. Another son, older son of the uncle was living in another part of the country working in a government position, I believe, and he was not harmed. This, the uncle was attacked because of the disagreement over the land and the well, and the people who happened to be in the home at the time were also harmed, but not, there's no evidence to support the fact that they were harmed because of their relationship. It could simply be because they were there. And again, this court would have to be compelled to conclude that there was another motive besides the personal dispute over the land, and the record just does not compel that conclusion. Additionally, substantial evidence supports the agency's finding that Mr. Carbado failed to establish extraordinary circumstances. Well, he did establish that he, for his untimely asylum application, that he had a legal disability up until he turned 18, but substantial evidence supports the finding that he did not file his asylum application within a reasonable time period after that, or that there were any changed circumstances in Mexico that materially affected his asylum eligibility. And finally, substantial evidence supports, well, excuse me, there's no abuse of discretion in the agency's denial of Mr. Carbado's request for administrative closure. If there are no further questions, please rest on the briefs. Thank you. Thank you. Thank you. I would just like to reiterate Your Honor's point that there is no evidence in the record pointing to persecution of anyone outside of the family. And there's no requirement that I'm aware of that every single member of a particular social group must be harmed or killed in order to satisfy the requirements for either asylum or withholding of removal. But does the fact that other family members remain unharmed suggest that any error in the failure to apply the proper test is harmless? The fact that other family members remain in the area, we would argue that the entire family was harmed by the loss of their family members. And the case law consistently shows that, particularly from a child's point of view, the loss of family members is direct harm. In Jorge Tsok, one of the cases we cited in our brief, the harm to family members took place in a different town and was still found to be direct harm to the petitioner in that case. But the fact that only some of the family members were harmed and that they continue to live in the area might be used by the government to argue that there have been a change in circumstances that now allows them to be safe, but it doesn't go to the issue of whether there was past persecution in this case. Whether there was past persecution depends on whether the harm suffered by the petitioner arises to the level of persecution and whether that harm was on account of or because of a protected ground. What do you make of the IJ's discussion of the fact that immediately after the incident? See, I'm looking at now at ER 83. Immediately thereafter, that portion of the family which had been responsible for this violence fled the small town and the respondent and his family have no idea as to their whereabouts and have had no contact with them since 2002. Again, I don't believe that that finding goes to the question of whether there was past persecution here. The persecution suffered by Mr. Quebrado included all of the events leading up to that. What goes to the well-founded fear of future persecution, which is what my question was directed at? Yes, but again, once the past persecution has been established, then there's a different test applied, and it's no longer a requirement that he show either a well-founded fear or that it's more likely than not that he'll be persecuted. The relevant question is whether the government can rebut that presumption by either showing a change in circumstances or reasonable relocation. If I understand also, I mean, I think there is in the record a basis on which a reasonable fact finder could have inferred that the government had met its burden of showing that there was no likelihood of future persecution, but in fact there was never any finding to that effect by the IJ or the BIA. So that's maybe an issue that would come up on remand, but it's not an issue before us now. That's correct, and again, it is the government's burden to rebut that presumption. Mr. Quebrado suffered extensive harm as a small child and continues to fear returning to his country, and he deserves to have his case fully heard in court and the correct standard applied. He is entitled to this presumption that he will be persecuted in the future. All right, thank you very much for your argument. Thank you. The matter is submitted for decision.
judges: Fernandez, Nguyen, Rakoff